UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW D. KOPPERL, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 3:09-CV-1754 (CSH) |
| KENT S. BAIN, AUTOMOTIVE RESTORATIONS, INC., VINTAGE RACING SERVICES, INC., JOHN ROLLS, and LAWRENCE A. NEVIASER, | ) ) ) AUGUST 30, 2010 ) |
| Defendants. | ) |

**RULING ON PLAINTIFF'S MOTION TO DISMISS AMENDED COUNTERCLAIMS OF CERTAIN DEFENDANTS**

HAIGHT, Senior District Judge:

In this diversity action arising out of a failed commercial relationship, plaintiff moves pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss certain counterclaims asserted by certain defendants for failure to state claims upon which relief can be granted.

**I. BACKGROUND**

According to his original Complaint [Doc. 1] and Amended Complaint [Doc. 29], Plaintiff Andrew D. Kopperl is a citizen of Massachusetts and an experienced auto racer, having participated in a number of seasons of professional Grand Am racing, and is technically proficient and knowledgeable about classic cars and racing cars.

Defendant Kent S. Bain is a citizen of Connecticut and the principal shareholder in the two corporate Defendants, Automotive Restorations, Inc. ("ARI") and Vintage Racing Services, Inc.

1

("VRS") (sometimes collectively, "the Bain Defendants"). ARI and VRS are Connecticut corporations with their principal places of business within the state. ARI sells and services classic cars and car parts to automobile collectors and enthusiasts. VRS restores, maintains and services classic racing cars.

The case has not progressed beyond the pleading stage. The parties' factual allegations are contained in Kopperl's original Complaint and Amended Complaint, the Bain Defendants' Answer, Affirmative Defenses, and Counterclaim [Doc. 14], and their Amended Counterclaim [Doc. 18]. Reading them, one would not think that these parties are inhabiting the same planet, let alone discussing the same case.

But it does appear to be common ground that in early 2006, Kopperl and Bain discussed the possibility of Kopperl becoming a partner in the business conducted by ARI and VRS. Kopperl alleges that Bain told him he owned controlling shares in ARI and VRS; Kopperl and Bain agreed that Bain would convey to Kopperl 50% of his ownership interest in the companies; Kopperl paid Bain $50,000 in March 2006 and $150,000 in September 2006 as "good faith deposits" toward his acquisition of 50% of Bain's interests in the companies; on November 1, 2006, Bain sent Kopperl a Letter of Agreement Bain had drafted to finalize that acquisition, which Kopperl signed and returned unchanged; and, in accordance with that letter agreement, on December 19, 2006 Kopperl paid Bain an additional $225,000 as a cash payment for Kopperl's acquisition of 50% of Bain's ownership interest in ARI and VRS.

To these allegations, the Bain Defendants enter a general denial. It would appear, however, that they acknowledge the existence of the letter agreement Kopperl signed and returned to Bain, since their first affirmative defense asserts that the contract Kopperl alleges is barred by the Statute

of Frauds because Bain, the party sought to be charged, did not sign it. For their part, the Bain Defendants allege that on March 10, 2006, Bain and Kopperl signed a Letter of Intent and Agreement in Principle dated February 27, 2006, reciting their agreement that Kopperl would acquire 50% of Bain's interest in ARI and VRS, with the purchase price, Kopperl's payment of it, and the structure of the transaction to be contained in a subsequent "Definitive Agreement," the Letter further providing that both Bain and Kopperl would "make a good faith effort" to come to such agreement, which Kopperl thereafter failed and refused to do.

It also appears to be common ground that Kopperl began employment at ARI and VRS, which was terminated on October 13, 2009, amid a welter of mutual ill will, charges and counter-charges, amply reflected by the pleadings' exchanges of broadsides.

Kopperl's Amended Complaint[1] contains these counts against the Bain Defendants: First, injunctive relief, ordering the Bain Defendants to reflect Kopperl's interest in the companies and issue stock certificates to him; Second, declaratory relief; Third, fraudulent misrepresentation; Fourth, negligent misrepresentation; Fifth, violations of the Connecticut Uniform Securities Act, Conn. Gen. Stat. § 36b-29(a); Sixth, breach of contract - stock; Seventh, breach of contract - amounts due; Eighth, violation of Conn. Gen. Stat. § 31-72 as to ARI and VRS; Ninth; violation of Conn.

---

[1] Plaintiff's Amended Complaint [Doc. 29], originally titled a Third Amended Complaint, was filed by consent on July 16, 2010. That filing mooted Plaintiff's earlier motion to file a Second Amended Complaint, which had not been responded or objected to. The principal purpose of the Amended Complaint is to add two additional defendants, John Rolls and Lawrence A. Neviaser, citizens of New York and Maryland respectively, who alone or together with Bain are charged in several counts with interfering with or depriving Kopperl of contract rights and property interests that Kopperl anticipated acquiring as the result of his relationship with the Bain Defendants. Rolls and Neviaser have been served and appeared through counsel, but not yet answered. These additional allegations and parties are not relevant to Kopperl's present motion to dismiss certain of the Bain Defendants' counterclaims against him.

Gen. Stat. § 31-72 as to Bain; Tenth, breach of fiduciary duty; Eleventh, breach of contract implied in fact; Twelfth, promissory estoppel; Thirteenth, conversion as to personalty; Fourteenth, conversion of ownership interests; Fifteenth, violation of Conn. Gen. Stat. § 52-564; and Nineteenth, unjust enrichment. Counts Sixteen, for tortious interference with contractual relations, Seventeen, for tortious interference with business expectancy, and Eighteen, for civil conspiracy, are brought against Defendants Rolls and Neviaser only.

The Bain Defendants' Amended Counterclaim contains these counts against Kopperl: First, breach of duty to negotiate in good faith; Second, declaratory relief; Third, fraudulent misrepresentation; Fourth, negligent misrepresentation; Fifth, breach of fiduciary duty; Sixth, breach of loyalty; Seventh, civil theft; Eighth, conversion; and Ninth, computer crime in violation of Conn. Gen Stat. § 53a–251.

Kopperl now moves under Rule 12(b)(6) to dismiss all the Bain Defendants' counterclaims except the Second, for declaratory relief. The Bain Defendants oppose the motion and argue for the legal viability of the challenged counterclaims.

## II. DISCUSSION

**A.    Standard of Review**

A motion to dismiss under Rule 12(b)(6) tests whether a pleading alleges a legally viable claim. In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Supreme Court clarified the pleading standard required to withstand a motion to dismiss. Only a complaint or counterclaim that states a plausible claim for relief survives a motion to dismiss. Determining whether a pleading states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. While legal

4

conclusions can provide the framework of a claim, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court must assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Although a court must accept as true all of the well-pleaded factual allegations in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

The Supreme Court articulated these standards in *Twombly* and *Iqbal*. The Second Circuit has reiterated and applied them in cases such as *Ruston v. Town Board for the Town of Skaneateles*, 610 F.3d 55, 58-59 (2d Cir. 2010), and *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009). Where a viable claim is comprised of several necessary elements, a claimant must allege facts sufficient under *Twombly* and *Iqbal* to satisfy each element. See, *e.g.*, *RSM Production Corp. v. Fridman*, No. 09-1202-cv, 2010 WL 2838582, *1 (2d Cir. July 21, 2010) (claims for tortious interference with contract and prospective economic advantage requiring plaintiff to allege that defendants' conduct caused the complained-of injury properly dismissed where "[l]ike the district court, we conclude that plaintiffs have failed plausibly to plead this element.") (citing *Iqbal* and *Twombly*).

In cases where, as here, a federal court's subject matter jurisdiction is based upon the diversity of the parties' citizenship, the governing substantive law is that of the state where the court sits. Accordingly, the elements of the Bain Defendants' counterclaims are governed by the law of Connecticut.

**B.     Analysis of the Bain Defendants' Counterclaims**

**1.      *The Manner in which the Bain Defendants Plead their Counterclaims***

The Bain Defendants assert their counterclaims against Kopperl in a pleading captioned

5

"Amended Counterclaim" in the singular, but comprised of nine separately numbered and captioned counterclaims, designated as Counts One through Nine.

The pleading prefaces the nine counterclaims with 40 paragraphs of allegations, some factual and some conclusory, which describe a number of negligent, bad faith, or fraudulent acts on Kopperl's part constituting negligence, fraud, breach of contract, or violations of Connecticut statutes. The counterclaims themselves follow a formula. With the exception of Count Two, which demands declaratory relief, each counterclaim is given a caption describing its nature; the 40 prefatory paragraphs are incorporated by reference; some additional allegations are made in some of the counterclaims; a violation of the particular legal duty is asserted; and each counterclaim concludes with the allegation that ARI, VRS, and Bain "suffered damages." The nature and amount of the damages suffered are not pleaded with respect to any counterclaim.

Plaintiff moves under Rule 12(b)(6) to dismiss all the counterclaims except Count Two, which seeks declaratory relief.

**2.**     *The Counterclaims' Allegations of Damages*

As noted, each of the Bain Defendants' counterclaims seeking monetary relief does nothing more than allege that as the result of Kopperl's conduct, as summarized in the counterclaim, the Bain Defendants have "suffered damages." There are no specific allegations, on any theory of recovery, with respect to the nature of those damages or their amount.

The Bain Defendants' brief appears to argue that the 40 paragraphs preceding the enumerated counterclaims contain all the necessary averments, leaving it to the Plaintiff (and to the Court) to match up the relevant paragraphs with each counterclaim's allegation of "damages." But the Bain Defendants' obligation to plead damages adequately may not be shifted in this fashion.

Damages are an essential element of a claim at law for monetary loss. A defendant's conduct, however reprehensible, is not actionable unless the plaintiff pleads and proves (1) that plaintiff's conduct caused him damage (the *causation* element) and (2) the amount of the damage with reasonable certainty, not left to surmise or speculation (the *quantum* element). If one prefers to state the proposition in Latin, the maxim *damnum absque injuria* comes to mind.

At the pleading stage, governed by Rule 12(b)(6), a plaintiff's demand for money damages must satisfy the *Twombly* and *Iqbal* requirement of factual, non-conclusory allegations stating a plausible claim that defendant's conduct caused specific economic harm in a quantifiable amount. *See Fink v. Time Warner Cable,* No. 08 Civ. 9628, 2009 WL 2207920 at *4 (S.D.N.Y. July 23, 2009) (where plaintiff claimed defendant's violation of Computer Fraud and Abuse Act "causes damage by impairing the integrity or availability of data and information, as well as certain communications and protocols," complaint dismissed because "[t]his allegation merely parrots the statutory language and is thus insufficiently factual to frame plausibly the damages element of plaintiff's CFAA claim.") (citing *Iqbal*).

Similarly, in the case at bar, the Bain Defendants' formulaic repetition in each counterclaim of the mantra that they "suffered damages" as the result of Kopperl's conduct does not satisfy the pleading requirements of *Twombly* and *Iqbal*. Nor is the deficiency cured by reference to the 40 prefatory paragraphs. Their inadequacy in this respect is illustrated by the Bain Defendants' argument in their brief at 6 that their damages caused by Kopperl's fraudulent misrepresentation are sufficiently pleaded by the allegation that "in reliance on Kopperl's representations, Bain, ARI and VRS wasted several years during which time they could have sought a partner and co-manager in the business who would execute a definite agreement and who had the financial wherewithal to do

so." One can only speculate what the Defendants may or may not have achieved if during those years they had sought other business partners. Such allegations do not state a plausible claim for an identified and quantified economic loss.

All the counterclaims challenged by Plaintiff's motion will be dismissed for failure to sufficiently allege damages. Leave will be given to replead damages for counterclaims which in all other respects state a viable claim. In repleading damages, the Defendants must state separately as to each counterclaim the nature of the injury or damages claimed and the amount as can best be calculated or estimated, coupled with factual allegations sufficient to state a plausible claim that the Plaintiff's alleged conduct giving rise to the particular counterclaim caused the complained-of injury.

In drafting any amended counterclaim pursuant to this Ruling, the Bain Defendants and counsel must keep in mind the provisions of Rule 11, Fed. R. Civ. P.

**3.**     ***Count One: Breach of Duty to Negotiate in Good Faith***

Plaintiff moves to dismiss this counterclaim on the ground that the alleged "cause of action for breach of a duty to negotiate in good faith is not a cognizable claim" under Connecticut law. Main Brief at 4.

In opposing that motion to dismiss, the Bain Defendants point out that the Letter of Intent signed by both Kopperl and Bain provided that the parties will "make a good faith effort to come to an agreement," and contend that "Plaintiff ignores the distinction between a preliminary agreement that does not bind the parties to their ultimate contractual objective, but which does contain a binding agreement to negotiate open terms in good faith." Brief at 3. For the proposition that they may enforce against Kopperl a binding agreement to negotiate in good faith, the Bain Defendants cite and quote *Vacold LLC v. Cerami*, 545 F.3d 114, 124 (2d Cir. 2008), which applied New York law.

*Vacold* is the most recent in a string of Second Circuit cases which divide binding preliminary agreements into two categories, Type I and Type II, with Type II binding the parties "to negotiate the open issues in good faith in an attempt to reach the objective within the agreed framework." *Id*. The earlier cases include *Network Enterprises, Inc. v. APBA Offshore Productions, Inc.*, 264 Fed.Appx. 36 (2d Cir. 2008); *Brown v. Cara*, 420 F.3d 148 (2d Cir. 2005); *Adjustrite Systems, Inc. v. GAB Business Services, Inc.*, 145 F.3d 543 (2d Cir. 1998), and *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69 (2d Cir. 1989). These cases adopt and follow the seminal opinion of District Judge Pierre Leval (as he then was) in *Teachers Insurance & Annuity Association of America v. Tribune Co.*, 670 F.Supp. 491 (S.D.N.Y. 1987), which first articulated the Type I/Type II analysis of binding preliminary agreements.

In the case at bar, the Bain Defendants contend that they have adequately pleaded a Type II binding preliminary agreement to negotiate in good faith the terms of the final agreement. "The considerations relevant to whether a binding Type II agreement exists are: (1) whether the intent to be bound is revealed by the language of the agreement; (2) the context of the negotiations; (3) the existence of open terms; (4) whether there was partial performance; and (5) the necessity of putting the agreement in final form, as indicated by the customary form of such transactions." *Network Enterprises*, 264 Fed.Appx. at 37 (citing *Brown v. Cara)*.

However, the question of whether the Bain Defendants have adequately pleaded an enforceable Type II agreement does not arise unless Connecticut law provides for such a cause of action. Judge Leval's decision in *Tribune* and the cited Second Circuit cases adopting it, including *Vacold*, all construed New York law. The Second Circuit made a particular point of that in *Brown*, noting that in *Tribune,* Judge Leval described the two types of binding preliminary agreements after

9

"collecting the relevant New York law," 420 F.3d at 153, and adding in a footnote: "Defendants express some doubts as to whether Type II agreements exist in New York law, or are merely a creature of the federal courts. However, New York courts have cited with approval *Tribune* and *Adjustrite*, and appear to recognize the possibility of 'Type II' preliminary agreements." *Id*. at 153 n.1 (citing New York cases).

I read *Brown* as an implicit but clear holding by the Second Circuit that in a diversity case, a federal court cannot enforce a Type II preliminary agreement unless the law of the state where it sits recognizes the concept. This is a logical requirement in diversity cases, since some states explicitly reject the concept. See, *e.g., Cinelli v. Ward*, 997 S.W.2d 474, 478 (S.Ct. Ky. 1999):

> Simply stated, we view the Agreement as lacking the necessary definiteness of an enforceable contract requiring consummation of the proposed transaction and as lacking the requisite intent of the parties to be bound to same. We construe it as merely an attempt to bind the parties to good faith negotiations. We note that *some jurisdictions recognize such agreements to negotiate in good faith* and have imposed a measure of damages for a party's failure to so negotiate. (citing *Tribune*). *We seem to take the "all or nothing" approach*: Either the agreement is enforceable as a binding contract to consummate the transaction or it is unenforceable as something less.

(citing Kentucky cases) (footnote omitted) (emphases added).

Moreover, the most recent New York cases relax their adherence to Type I/Type II preliminary agreement analysis. In *IDT Corp. v. Tyco Group, S.A.R.L.,* 13 N.Y.3d 209, 215 n.2 (2009), affirming the dismissal of a complaint, the New York Court of Appeals said:

> The parties debate whether the settlement is a Type I or Type II preliminary agreement as used in federal lines of cases (citing *Brown* and *Tribune*). While we do not disagree with the reasoning in federal cases, we do not find the rigid classifications into "Types" useful. . . . [W]e find that it is enough to ask in this case whether the agreement contemplated the negotiation of later agreements and if the

10

consummation of those agreements was a precondition to a party's performance. In the instant matter, it clearly was.

In *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 70 A.D.3d 423, 427 (1st Dept. 2010), the Appellate Division declined to follow *Tribune* because "our Court of Appeals recently rejected the Federal Type I/Type II classifications as too rigid" (citing *IDT Corp.*). These cases would undermine the Bain Defendants' reliance upon Second Circuit cases construing New York law, even if New York law governed this case, which it does not.

In the case at bar, the relevant question is whether, under Connecticut law, a preliminary agreement may bind a party to negotiate in good faith with respect to the open issues and terms in the final contemplated agreement, so that a failure or refusal to negotiate those terms constitutes an actionable breach of contract. The few Connecticut cases cited in the parties' briefs do not directly address that question. In his Main Brief at 4, Plaintiff relies on *Dacourt Group, Inc. v. Babcock Industries, Inc.*, 747 F.Supp. 157, 160 (D.Conn. 1990), a diversity case which cited only *Tribune* and another case that applied New York law, *Reprosystem B.V. v. SCM Corp.*, 727 F.2d 257, 264 (2d. Cir. 1984). Appearing to accept the regimen set forth in those New York cases without any discussion of whether it was applicable under Connecticut law, Judge Eginton rejected the plaintiff's claim on the facts: "Based on the evidence presented, the Court does not find that . . . a *binding* preliminary agreement sufficient to support an implied duty of good faith existed." *Dacourt*, 747 F. Supp. at 160 (emphasis in original). In light of the fact that *Dacourt* did not discuss whether the duty to negotiate in good faith applies in Connecticut or cite any Connecticut cases recognizing such a duty, this Court does not consider it persuasive authority that a cause of action for breach of duty to negotiate in good faith exists under Connecticut law.

In a diversity case, a federal court's proper function is to apply the law of the state in which it sits, not create that law. Therefore, in the absence of a showing that this counterclaim is viable under Connecticut law, it will be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, without leave to replead.

**4.     *Count Three: Fraudulent Misrepresentation***

The gravamen of this counterclaim is that Kopperl fraudulently misrepresented "that he intended to negotiate and finalize the terms of a Definitive Agreement and that he had the financial wherewithal to complete the transaction." Bain Defendants' Brief at 5.

Plaintiff contends that this claim cannot be legally viable because there is no enforceable contractual obligation under Connecticut law to negotiate in good faith in the circumstances of the case, "and thus no claim can be asserted for a misrepresentation regarding a non-existent duty." Plaintiff's Reply Brief at 3. But the second proposition does not necessarily follow from the first. The elements of a cause of action for fraudulent misrepresentation are "(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment." *Billington v. Billington*, 220 Conn. 212, 217 (1991). A false representation by Kopperl that he intended to negotiate in good faith is a statement of fact that satisfies the first element, whether or not he had a legal duty to do so. The February 27, 2006 Letter of Intent and Agreement in Principle, signed by both Kopperl and Bain, establishes the timing, content and form of Kopperl's statements the Bain Defendants say were false. At least for the purpose of pleading a plausible claim, fraudulent intent may be inferred from Kopperl's alleged stonewalling of Bain's repeated efforts to get him to discuss the final contract terms.

Where the fraudulent misrepresentation counterclaim fails to pass *Twombly-Iqbal* muster is in the fourth element, which requires factual allegations sufficient to show that the Bain Defendants relied on Kopperl's false statements of intent "to [their] detriment," that is to say, Kopperl's conduct caused the Bain Defendants damages which must be adequately pled. Fraud is not actionable unless it causes damage. The deficiency of this counterclaim in that regard was discussed *supra*. This counterclaim will be dismissed, with leave to replead on the element of damages.

5. *Count Four: Negligent Misrepresentation*

I reach the same conclusion with respect to the Bain Defendants' counterclaim for negligent misrepresentation. The elements for this cause of action are that "(1) defendant had a duty to use reasonable care in giving information, (2) defendant supplied false information, (3) upon which the plaintiff relied, to its damages." *Winn v. Ameriquest Mortgage Co.*, No. CV-05-40150021S, 2006 WL 122975 (Sup.Ct. Hartford Apr, 12, 2006). This claim arises out of the same nexus of facts pleaded in support of the counterclaim for fraudulent misrepresentation. Kopperl's argument that "Defendants make no claim that Plaintiff owed any *duty* to enter into an agreement with them," Main Brief at 8, misses the mark: the duty alleged on the part of Kopperl is to use reasonable care in giving information about his intentions and capacity during the course of serious and important discussions about a commercial relationship. This counterclaim is adequately pled, except for the element of damages, discussed *supra*. This counterclaim will be dismissed, with leave to replead on the element of damages.

6. *Counts Five and Six: Breach of Fiduciary Duty and Breach of Duty of Loyalty*

The Amended Counterclaim alleges in prefatory ¶ 15 that, "[p]resuming that Bain and Kopperl would reach a definitive agreement, Bain hired Kopperl as a director of ARI and VRS, with

his title to be determined by the definitive agreement."

Kopperl does not dispute on this motion that he was a director of the corporate defendants at times pertinent to the case. He does not deny that a company director owes a fiduciary duty and a duty of loyalty to the company. Notwithstanding Kopperl's contrary assertions, the counterclaims adequately allege acts that, if proven, would constitute breaches by Kopperl of those duties, principally the diversion to himself of company funds generated by transactions involving vehicles.

Kopperl's Reply Brief at 6 says that such allegations pertain to "his performance *as an employee* of ARI and VRS" and "are irrelevant to Mr. Kopperl's performance *as a director* of ARI and VRS, and thus irrelevant to a breach of fiduciary duty claim." No authority is cited for the doubtful proposition that a company director may wrongfully divert company funds and escape a charge of breach of fiduciary duty because he was also an employee at the time. Most corporate employees are not directors, but this one was. Nor is there substance to Kopperl's contention that these counterclaims' "failure to allege that any of these transactions was either concealed from the Defendants, or unauthorized by them" render them insufficient under *Iqbal*. The descriptions of the transactions are introduced by the allegation in prefatory ¶ 26 that "Kopperl was also improperly and fraudulently booking sales of automobiles."

However, these counterclaims trail off into inadequate pleading. Count Five alleges that "Kopperl violated his fiduciary duties to ARI, VRS and Bain in various ways as aforedescribed," and "[a]s a result of the foregoing, ARI, VRS, and Bain have suffered damages." ¶¶ 43, 44. Count Six recites the same formula for the breach of the duty of loyalty. The Defendants and the Court are left to select from the 40 prefatory paragraphs the particular conduct that constitutes a particular breach. These counterclaims also fail to allege damages sufficiently, for the reasons previously stated.

Counts Five and Six will be dismissed, with leave to replead, specifying which alleged acts of the Plaintiff constitute a breach of the duties involved, and stating a claim for damages in a manner consistent with this Ruling, or if so advised, asserting a claim for nominal damages. See *News American Marketing In-Store, Inc. v. Marquis*, 86 Conn. App. 527, 535 (2004).

**7.**     ***Counts Seven and Eight: Civil Theft and Conversion***

These counterclaims sufficiently allege actionable diversions by Kopperl of property belonging to the Bain Defendants. However, the allegations of damages are deficient. These counterclaims will be dismissed, with leave to replead a claim for damages in a manner consistent with this Ruling.

**8.**     ***Count Nine: Computer Crime - Violation of Conn. Gen. Stat. § 53a-251***

Conn. Gen Stat. § 53a-251 contains the state's computer-crime statute. Conn. Gen. Stat. § 52-570b provides that "any person who suffers any injury to person, business or property may bring an action for damages against a person who is alleged to have violated any provision of section 53a-251." The Bain Defendants rely on that provision in asserting this counterclaim against Plaintiff.

Count Nine does not assert a plausible claim under the statute. All the prefatory paragraphs allege on this subject is that after his termination, "Kopperl breached the privacy and security of the electronic data used at ARI and VRS" and "surreptitiously and unlawfully accessed company email through the accounts and passwords of two other active employees" in conjunction with "several unsuccessful attempts by Kopperl to access the computer system under his own, then-deactivated, account." ¶¶ 37, 39. While the Bain Defendants allege that Kopperl accessed the companies' computer systems without authorization, there is no allegation that Kopperl used the accessed information in any way that caused damage to the Defendants. Accordingly, the Defendants do not

state a viable statutory claim. In *News American,* 86 Conn.App. at 547-48, a case where unauthorized computer access undoubtedly occurred, the Connecticut Appellate Court held that "[i]n order to state a valid claim under § 52-570b, however, the plaintiff needed to show that it suffered injury," and the claim was properly rejected where the trial court "found that the record contained no evidence of injury, actual damages, unjust enrichment, actual loss or pecuniary loss suffered by the plaintiff." In the case at bar, there is no allegation of that necessary element.

While the Bain Defendants seek to distinguish *News American* on the ground that the defendant in that case was still in plaintiff's employ when he accessed the company's computers without authorization, whereas Kopperl's employment had been terminated, this is a distinction without a difference; injury is a necessary element in either event.

The Defendants also assert in their Brief at 11 that "[t]he legislation, however, does not require proof – or allegations – of pecuniary loss to satisfy the element of harm." For that proposition they cite and quote § 52-570b as follows: "Proof of pecuniary loss is not required to establish actual damages . . . " This is in fact a partial quotation of § 52-570b(d), which reads in its entirety (with the words Defendants omitted in italics): "Proof of pecuniary loss is not required to establish actual damages *in connection with an alleged violation of subsection (e) of section 53a-251 arising from misuse of private personal data.*" The statute defines "private personal data" as "data concerning a natural person which a reasonable person would want to keep private and which is protectable under law." Conn. Gen. Stat. § 53a-250(10). The Defendants' counterclaim fails to allege that Kopperl accessed any private personal data, or that he misused any accessed data and caused injury thereby.

Count Nine will be dismissed without leave to replead.

16

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss Counts One and Nine of the Bain Defendants' Amended Counterclaim is GRANTED, without leave to replead.

Plaintiff's motion to dismiss Counts Three, Four, Five, Six, Seven and Eight of the Bain Defendants' Amended Counterclaim is GRANTED, with leave to replead.  Any repleaded counterclaims must be filed and served not later than **September 22, 2010.**

It is SO ORDERED.

Dated:   New Haven, Connecticut

   August 30, 2010

                                          /s/ Charles S. Haight, Jr.
                                          CHARLES S. HAIGHT, JR.
                                          SENIOR UNITED STATES DISTRICT JUDGE